FILED

18 JAN 11 AM 8:35

[illegible stamp]

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEDICINOVA, INC.,<br><br>                      Plaintiff,<br>v.<br><br>GENZYME CORPORATION,<br><br>                      Defendant. | Case No.: 17cv1572-JLS(KSC)<br><br>**[Related to: 14cv2513-JLS(KSC)]**<br><br>**ORDER RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE WITH SUBPOENA BY NON-PARTY BIORELIANCE CORP. [Doc. No. 1]** |

      Before the Court is plaintiff's Motion to Compel Compliance with Subpoena by Third Party BioReliance Corporation (BioReliance). [Doc. No. 1.] This Motion was originally filed as a miscellaneous action in the District of Maryland and then transferred here because the matter is related to a case filed in this District, *Medicinova, Inc. v. Genzyme Corporation*, Case No. 14cv2513-JLS(KSC) (the underlying action). [Doc. No. 5.] The subject of the Motion is a subpoena served on third party BioReliance at its headquarters in Maryland on May 2, 2017. [Doc. No. 1, at pp 1-2.] BioReliance objected to the subpoena and has also filed an Opposition to plaintiff's Motion. [Doc. No. 4.] For the reasons outlined below, the Court finds that plaintiff's Motion to Compel Compliance with the Subpoena by Third Party BioReliance must be DENIED,

///

1

and the subpoena must be QUASHED pursuant to Federal Rule of Civil Procedure 45(d)(3)(A)(iv).

## *Background*

Plaintiff's First Amended Complaint in the underlying action includes causes of action against defendant Genzyme Corporation for breach of contract and breach of the covenant of good faith and fair dealing. [Doc. No. 13, at p. 1, Case No. 14cv2513-JLS(KSC).] Both of these causes of action are based on defendant's alleged breach of a written Assignment Agreement dated December 19, 2005 between defendant and Avigen, Inc. [Doc. No. 13, at pp. 1-6.] "On or about December 18, 2009, Avigen, Inc. merged with [plaintiff]. As a result, [plaintiff] assumed all rights under the Assignment Agreement. . . ." [Doc. No. 13, at p. 3.]

Under the Assignment Agreement, defendant acquired "certain gene therapy intellectual property and gene therapy research and developmental programs." [Doc. No. 13, at p. 2.] In return, plaintiff is entitled to "certain milestone payments" based on the development of products that use the acquired intellectual property and technology. [Doc. No. 13, at p. 3.] "[A] milestone payment is due under the Assignment Agreement when the first patient is dosed or treated in a Phase I clinical study with a product that is covered by a claim of one of the Gene Therapy Patents issued in certain major markets, including the United States. . . ." [Doc. No. 13, at p. 3.] Specifically at issue in the First Amended Complaint are: (1) an AAV vector technology, which provides "a mechanism for transferring genes into a targeted set of cells within a patient in order to potentially treat a variety of diseases" [Doc. No. 13, at p. 3]; and (2) the '237 Patent and other related patents. [Doc. No. 13, at pp. 3-4.] According to the First Amended Complaint, certain claims in the '237 patent cover the AAV vector technology. [Doc. No. 13, at p. 4.]

The First Amended Complaint alleges that defendant advised plaintiff in March 2014 that it "was currently conducting a Phase 1 clinical trial of a gene therapy product . . . named AAV-sFLT" and that all patients in the clinical trial "had already

2

been dosed with AAV-sFLT." [Doc. No. 13, at p. 3.] However, defendant did not provide plaintiff "with any of the technical details of its AAV-sFLT technology" and failed to make the $1,000,000 milestone payment under the Assignment Agreement. [Doc. No. 13, at p. 4.]

The First Amended Complaint also states as follows: "To date, [defendant] has never provided [plaintiff] with any of the underlying records or documentation concerning AAV-SFLT or its clinical trial, and [plaintiff] does not independently have access to such records and documentation. Until [plaintiff] obtains access to these records and documentation, [plaintiff] cannot fully assess whether any additional Gene Therapy Patents in the Assignment Agreement were breached by [defendant] during the AAV-sFLT clinical trial." [Doc. No. 13, at p. 4.]

## *Discussion*

In the Motion to Compel [17cv1572-JLS(KSC)], plaintiff explains that third party BioReliance provides testing and manufacturing services to pharmaceutical and biopharmaceutical companies. Plaintiff claims that BioReliance "is likely to be in possession of information, including testing information, relating to the characteristics and features of [defendant's] AAV-sFLT product." [Doc. No. 1, at p. 2.] Plaintiff's subpoena demands disclosure of all communications between BioReliance and defendant concerning this product and the related patents, as well as all documents and things related to any testing of the product performed by BioReliance and "all source documentation." [Doc. No. 1-3, at p. 8 (Pl.'s Ex. 2); Doc. No. 4-4, at p. 8 (BioReliance's Ex. B).] Plaintiff seeks documents and information from BioReliance related to the characteristics of the product, because a key issue in its action against defendant is whether the product falls within the scope of certain patents. [Doc. No. 1-1, at pp. 1-2.]

Plaintiff claims that BioReliance was supposed to comply with the subpoena on May 12, 2017. However, on May 8, 2017, counsel for BioReliance contacted plaintiff's counsel and requested an extension of time to respond to the subpoena until May 26,

3

17cv1572-JLS(KSC)

2017, and plaintiff agreed to the extension. On May 26, 2017, BioReliance objected to the subpoena and did not produce any responsive documents. Plaintiff complains that "BioReliance served untimely objections" on May 26, 2017. [Doc. No. 1-1, at p. 3] However, plaintiff cannot complain that the objections were untimely after it agreed to the extension of time until May 26, 2017. Accordingly, the Court rejects plaintiff's argument that BioReliance waived its objections to the subpoena on this basis.

BioReliance's Objections to the subpoena state that plaintiff's requests for documents and materials are overly broad, unduly burdensome, disproportionate, and duplicative of other requests. [Doc. No. 4-7, at pp. 3-7 *et seq.* (BioReliance, Ex. E); Doc. No. 1-1, at p. 3.] In addition, BioReliance stated in its Objections that it was unable to identify potentially responsive documents or information because "BioReliance provided services to [defendant] on bases separate and apart from, and irreconcilable with, the identifiers and information provided in the subpoena." [Doc. No. 4-7, at pp. 11-14; Doc. No. 1-1, at p. 3.]

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed.R.Civ.P. 26(b)(1).

"A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed.R.Civ.P. 45(d)(1). "On timely motion, the court for the district where compliance is required must quash or modify a subpoena that: . . . (iv) subjects a person to undue burden." Fed.R.Civ.P. 45(d)(3)(A)(iv).

Plaintiff argues that the Court should issue an order enforcing the subpoena, because BioReliance's Objections to the subpoena are unjustified. [Doc. No. 1-1, at

4

p. 5.] Plaintiff rejects BioReliance's contention that the document requests in the subpoena are overly broad, unduly burdensome, and disproportionate, because it believes its requests are "narrowly tailored." [Doc. No. 1-1, at p. 6.] Plaintiff also does not believe BioReliance's representations that it conducted a search but was unable to locate any responsive documents or information based on the identifiers and information set forth in the subpoena. [Doc. No. 1-1, at pp. 7-8.] With respect to BioReliance's contention that the subpoena is duplicative because it seeks documents and information that plaintiff should obtain directly from defendant rather than from BioReliance, plaintiff claims that the subpoena was "drafted specifically" to elicit information "likely to be in BioReliance's possession only." [Doc. No. 1-1, at p. 8.] According to plaintiff, it is irrelevant that some of the subpoenaed documents and information may overlap with whatever it has requested from defendant. Plaintiff contends that "the likelihood that the two sets of documents will reveal different information entitles [plaintiff] to discovery from both companies." [Doc. No. 1-1, at p. 8.] For example, plaintiff believes BioReliance may be the only party in possession of laboratory notes taken during testing. [Doc. No. 1-1, at p. 9.] Plaintiff's final request is that the Court impose monetary sanctions against BioReliance for raising "meritless objections" to the subpoena. [Doc. No. 1-1, at p. 10.]

BioReliance contends that the subpoena is overly burdensome for three main reasons. First, BioReliance argues that it should not be compelled to produce documents that are already in defendant's possession, custody, and control. In support of this argument, BioReliance cites the following statement plaintiff made in a Joint Motion for Determination of Discovery Dispute filed on June 8, 2017 in the underlying action: "[Defendant] . . . has sole possession of all the information relevant to the parties' claims and defenses." [Doc. No. 4, at p. 3, citing Doc. No. 47, at p. 13, Case No. 14cv2513-JLS(KSC).]

While it is true that plaintiff has stated that the subpoena was "drafted specifically" to elicit information "likely to be in BioReliance's possession only," such as laboratory

5

notes [Doc. No. 1-1, at p. 8], three of the four document requests in the subpoena seek communications between BioReliance and defendant. Only Document Request No. 3 seeks source documentation and documents or things related to testing, and there is nothing other than plaintiff's speculation to indicate BioReliance is likely to be the only party with possession of any such documents. [Doc. No. 4-4, at p. 8.] It also appears that plaintiff would like the opportunity to compare any documents or information it could obtain from BioReliance with defendant's disclosures, because it believes the two sets would "reveal different information." [Doc. No. 1-1, at p. 8.] However, without more, this reason is wholly speculative and is not enough to justify the burden of production on a third party such as BioReliance. For example, the Court has no reason to believe defendant, if specifically requested to do so during the discovery period, would not have produced a complete set of all of the documents plaintiff is seeking from BioReliance by way of subpoena.

Second, BioReliance believes that the purpose of plaintiff's Motion to Compel is "to effect an end run around the [discovery] restrictions" imposed against plaintiff as a result of this Court's June 29, 2017 Order. [Doc. No. 4, at p. 2, citing Doc. No. 50, Case No. 14cv2513-JLS(KSC).] In pertinent part, this Court's June 29, 2017 Order denied plaintiff's request for an order compelling defendant to provide full and complete responses to Document Request Nos. 1 through 20, for four reasons:

(1) Plaintiff's request for such an order was untimely [Doc. No. 50, at pp. 3-5];

(2) Plaintiff's Document Request Nos. 1 through 20 were so overly broad on their face and sought such a wide range of documents that they could not possibly be reasonably tailored to fit the needs of the case [Doc. No. 50, at p. 11];

(3) It did not appear that plaintiff made any effort during the parties' meet and confer sessions to narrow the scope of Document Request Nos. 1 through 20 [Doc. No. 50, at p. 11];

///

///

6

(4) Plaintiff did not explain in the parties' Joint Motion why it was seeking particular types of documents and why those documents were likely to include information that was important to resolving the issues at stake [Doc. No. 50, at p. 12].

The Court's June 29, 2017 Order did "briefly re-open fact discovery [until August 31, 2017] solely for the purpose of allowing plaintiff to serve defendant with a narrowly tailored set of five or fewer document requests." [Doc. No. 50, at p. 12.] The Court determined it was appropriate to briefly re-open discovery for this limited purpose, because it was apparent that defendant had also not made "any effort during meet and confer sessions to compromise or to adequately address plaintiff's concern that defendant had not produced 'source documents' necessary for plaintiff to obtain 'a complete picture of the facts.'" [Doc. No. 50, at p. 12.]

Based on the information in the record, it does not appear that plaintiff served BioReliance with the subpoena in order to "to effect an end run around the [discovery] restrictions" imposed against plaintiff as a result of this Court's June 29, 2017 Order. [Doc. No. 4, at p. 2, citing Doc. No. 50, Case No. 14cv2513-JLS(KSC).] The Court notes that plaintiff served BioReliance with the subpoena on May 2, 2017 and sought compliance by May 12, 2017. [Doc. No. 1-1, at p. 3] At that time, the deadline for completing fact discovery was June 2, 2017. [Doc. No. 43, at p. 2, Case No. 14cv2513-JLS(KSC).] The subpoena was also served before the Court's June 29, 2017 Order was issued. However, it is possible but unclear whether plaintiff decided to pursue its Motion to Compel Compliance with the Subpoena, which was filed on July 11, 2017, because the Court's June 29, 2017 restricted its ability to obtain all of the documents it was seeking from defendant.

Third, and most significantly, BioReliance has been advising plaintiff all along that it is unable to locate the documents and information plaintiff seeks based on the document requests as worded in the subpoena. [Doc. No. 4, at pp. 8-10.] In support of this argument, BioReliance submitted a Declaration signed by a senior manager, Irene Griff, who has worked for BioReliance for more than 12 years. [Doc. No. 4-1, at pp. 1-

7

2.] Ms. Griff explains in her Declaration that BioReliance has provided testing and manufacturing services to many customers, including defendant, pursuant to specific contracts that describe the work to be performed. However, the work to be performed is not directly identified. Coding is used so that the personnel who perform the services "are largely 'blind' to the nature of the therapeutic product or other item that is the subject of the study's contract services." [Doc. No. 4-1, at p. 2.] Ms. Griff performed searches of BioReliance's database using the identifiers in the subpoena. She also instructed certain employees at BioReliance to search their e-mail accounts using these identifiers, but "[a]ll such attempted searches returned no results." [Doc. No. 4-1, at p. 3.]

Based on Ms. Griff's uncontested Declaration, the Court finds that BioReliance is unable to comply with the subpoena, because plaintiff did not provide sufficient identifying information in its document requests. The record shows that plaintiff was not only advised of this problem in BioReliance's May 26, 2017 Objections [Doc. No. 4-7, at p. 15 (BioReliance's Ex E)], but also in at least two letters on June 12, 2017 [Doc. No. 4-9, at p. 3 (BioReliance Exh. G)] and June 22, 2017 [Doc. No. 4-8, at pp. 3-4 (BioReliance Exh. F)]. Because the discovery deadline was June 2, 2017 and plaintiff was advised on May 26, 2017 by BioReliance that it could not comply with the subpoena without additional identifying information, it is apparent that plaintiff did not have enough time to serve defendant with additional discovery requests to obtain this information.

On the other hand, if plaintiff had reason to believe the subpoenaed discovery was important to resolving the issues in the case, it could have requested an extension of the discovery deadline in order to request the necessary identifying information from defendant. Plaintiff did not do so. Instead, as the above-referenced correspondence indicates, plaintiff simply and repeatedly badgered BioReliance, hoping it would eventually comply with the subpoena. Plaintiff then filed its Motion to Compel in the District of Maryland on July 11, 2017. [Doc. No. 1, at p. 1.]

Under the circumstances presented, plaintiff is not entitled to an order compelling BioReliance to comply with the subpoena. The subpoena must therefore be quashed under Federal Rule of Civil Procedure 45(d)(3)(A)(iv) as unduly burdensome. The subpoena seeks to discover documents and information that plaintiff could have obtained directly from defendant in the underlying action during the extended discovery period[1] without placing any burden on a third party. In addition, BioReliance is unable to comply with the subpoena, because plaintiff did not provide BioReliance with sufficient identifying information, even though BioReliance specifically advised plaintiff in its Objections that it could not comply with the subpoena as worded.

## *Conclusion*

Based on the foregoing, IT IS HEREBY ORDERED that plaintiff's Motion to Compel Compliance with Subpoena by Non-Party BioReliance is DENIED. In addition, the subpoena is QUASHED as unduly burdensome under Federal Rule of Civil Procedure 45(d)(3)(A)(iv). The parties' requests for monetary sanctions are also DENIED, as the Court finds that imposing monetary sanctions would be unjust.

IT IS SO ORDERED.

Dated: January 10, 2018

Hon. Karen S. Crawford
United States Magistrate Judge

---

[1] The parties' deadline for completing initial disclosures in this case was July 21, 2016. [Doc. No. 23.] The original Scheduling Order filed on August 11, 2016 set a January 31, 2017 deadline for completing discovery. [Doc. No. 35.] This deadline was later extended to June 2, 2017. [Doc. No. 43.] On plaintiff's behalf and for a limited purpose, the deadline was extended once again to August 31, 2017. [Doc. No. 50.] In other words, plaintiff had more than a year to complete discovery in this case.

9